IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| HDR HOLDINGS, INC., *et al.*, ) | |
| ) | Bankr. Case No. 19-11396 (MFW) |
| Debtors. ) | |
| | |
| OFFICIAL COMMITTEE OF ) | |
| UNSECURED CREDITORS OF HDR ) | |
| HOLDINGS, INC., DNOW L.P., ) | |
| ) | |
| Appellants, ) | C.A. No. 19-1825 (MN) |
| v. ) | C.A. No. 19-1946 (MN) |
| ) | |
| GENNX360 CAPITAL PARTNERS, L.P., ) | |
| SCHRAMM, INC., HARK CAPITAL I, ) | |
| L.P., ) | |
| Appellees. ) | |

## MEMORANDUM OPINION

Pauline K. Morgan, Sean T. Greecher, Joseph M. Mulvihill, Jared W. Kochenash, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE – Attorneys for HDR Holdings, Inc. and Schramm, Inc.

Donald J. Detweiler, John H. Schanne, II, PEPPER HAMILTON LLP, Wilmington, DE – Attorneys for Official Committee of Unsecured Creditors of HRD Holding, Inc., et al.

Michael D. DeBaecke, ASHBY & GEDDES P.A., Wilmington, DE – Attorneys for DNOW L.P.

Jamie L. Edmonson, ROBINSON & COLE LLP, Wilmington, DE; Carey D. Schreiber, WINSTON & STRAWN LLP, New York, NY – Attorneys for GenNx360 Capital Partners, L.P. and Schramm II Inc.

November 9, 2020
Wilmington, DE

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are two appeals from a September 17, 2019 Bankruptcy Court order (Bankr. D.I. 208)[1] ("Sale Order"), entered in the Chapter 11 cases of HDR Holdings, Inc. ("HDR") and Schramm, Inc. (together, "Debtors"). The Sale Order authorized the sale of substantially all of the Debtors' assets pursuant to 11 U.S.C. § 363. The first appeal was filed by the Official Committee of Unsecured Creditors ("Committee"), and the second appeal was filed by DNOW, L.P. (together, "Appellants"). The Debtors, GenNx360 Capital Partners, L.P., and Schramm II Inc. (together, "Appellees") have moved to dismiss the appeals ("Motion to Dismiss")[2] as statutorily moot pursuant to 11 U.S.C. § 363(m). For the reasons set forth herein, the Court will GRANT the motion and dismiss the appeals.

**I.     BACKGROUND**

   **A.     Chapter 11 Cases and Sale Motion**

On June 24, 2019, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. Prior to the filing, Appellee GenNx360 financially supported the Debtors. Following the filing, Appellee Schramm II, as the debtor-in-possession (or "DIP") lender, provided $6 million in new-money DIP financing to help the Debtors transition into chapter 11 and fund a sale process. Schramm II also agreed to act as the initial "stalking horse" bidder to purchase all of the Debtors' assets (with certain specific exceptions), setting the low-end bidding bar from which alternative bidders would have an opportunity to make higher or otherwise better bids.

---

[1]  The docket of the Chapter 11 cases, captioned *In re HDR Holdings, Inc., et al.*, No. 19-11396-MFW (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

[2]  C.A. No. 19-1825 (MN), D.I. 7; C.A. No. 19-1946 (MN), D.I. 6.

The Debtors moved to sell substantially all of their assets to Schramm II, including avoidance actions (Bankr. D.I. 18 ¶ 23) ("Sale Motion") but excluding the "Excluded Assets" (*id*., Exh. 4 at §§ 2.1-2.2). The Stalking Horse Purchase Agreement ("APA"), as approved by the bid procedures order (Bankr. D.I. 163-2) ("Bid Procedures Order"), does not define avoidance actions. Generally speaking, avoidance actions are asserted on behalf of a bankruptcy estate to recover assets transferred out of the estate before the bankruptcy began. (*See* Bankr. D.I. 164 ("Final DIP Financing Order") ¶ 10(c) (defining avoidance actions as "any claims and causes of action relating to or arising under chapter 5 of the Bankruptcy Code, including §§ 544, 545, 547, 548 and 550 or any other similar state or federal law and any and all products, rents, offspring, profits, and proceeds of same."). The definition of Excluded Assets set forth in the APA does not exclude avoidance actions from the proposed sale. (Bankr. D.I. 163-2 at 4; *id*. at §§ 2.2).

**B.     Bid Procedures Order and APA**

Appellants – the Committee and DNOW (an unsecured creditor and chair of the Committee) – objected to the Debtors' initial bidding procedures and DIP financing. On August 2, 2019, the Bankruptcy Court held a hearing on the proposed bid procedures, Final DIP financing Order, and APA with Schramm II as the stalking horse bidder. At that hearing, the parties negotiated and agreed to significant modifications to the terms of the proposed sale. The parties agreed that (1) Debtors would solicit and accept piecemeal bids for all assets, rather than selling them as a package; (2) Schramm II's baseline bid would be lowered by $5 million to lower the threshold for potential overbids; (3) the bidding process would be extended by more than three weeks, at the expense of Appellees, to give potential bidders a chance to consider their options; and (4) Debtors would appoint an independent director to oversee the sale process and to ensure that all potential bidders had a full and fair opportunity to consider their purchase and make any

bid.  The parties subsequently agreed to modifications of the terms of the proposed sale. Appellants advised the Bankruptcy Court that the modifications resolved their objections, and consented to the APA's terms, as well as to the Bankruptcy Court's entry of an "Order Establishing Bidding Procedures and Granting Related Relief" ("the Bid Procedures Order") and approval of the APA with Schramm II (subject only to "higher or otherwise better" offers).  The assets to be acquired by Schramm II under the APA were approved by the Bankruptcy Court as part of the agreed Bid Procedures Order.  (Bankr. D.I. 151, Transcript of 8/2/19 Bid Procedures Hearing ("Bid Procedures Hr'g Tr.") at 128:20–23, 129:8–9, 131:24–25, 132:1–9; Bankr. D.I. 163-2).

Under the APA, Schramm II was authorized to pay $16.3 million for Schramm's assets. (APA § 2.5, sched. 2.5; Bankr. D.I. 164 ¶ 32).  The purchase price consisted of: (1) a "credit bid" of the $6 million Schramm II was owed under the DIP loan; (2) assumption of approximately $5.3 million of debt owed to an entity called Hark I, under a term loan Hark provided the Debtors prepetition ("Term Loan A"), and the application of that amount towards the purchase price; and (3) the ability to assume or "credit bid" $5 million owed to GenNx360 under a term loan GenNx360 had given the Debtors ("Term Loan B"), provided that if Schramm II wanted to use the Term Loan B debt as currency at an auction, it would cash collateralize those amounts dollar for dollar.  (*Id.*; Bid Procedures Hr'g Tr. at 129:23–25, 130:1–19).  The Committee and DNOW agreed to all of the terms as part of their consent to the Bid Procedures Order and APA.  (*See* Bid Procedures Hr'g Tr. at 129:17–132:9; Bankr. D.I. 163, Schedule 2).

      **C.**     **The Avoidance Actions**

Schramm II is wholly owned by GenNx360, the Debtors' controlling majority shareholder. On September 11, 2019, well after execution of the APA (June 24, 2019) and entry of the Final DIP Financing Order and the Bidding Procedures Order (both entered on August 7, 2019), the

Committee commenced an adversary action against GenNx360 (Bankr. D.I. 198) ("the Committee Adversary Action"). GenNx360, along with its affiliates and certain directors and officers, are the primary targets of the claims set forth in the Committee Adversary Action ("Avoidance Actions").

### D. Sale Order

No other bids were received and, thus, no auction was held. As a result, Schramm II did not exercise its right to "credit bid" the $5 million owed to GenNx360 under the Term Loan B. Notwithstanding having satisfied the purchase price of $11.3 million that had been agreed with Appellants, Schramm II also assumed $5 million in Term Loan B debt – as it was permitted to do under the APA and Bid Procedures Order – which benefitted the estates by eliminating a $5 million liability. (Bankr. D.I. 164 ¶ 32; Bankr. D.I. 209, 9/16/2019 Transcript of Sale Hearing ("Sale Hr'g Tr.") at 101:5–11 ("So, let's turn to the value that this sale actually does provide . . . . First, this satisfies the DIP, plus the Term Loan A obligations, plus the assumption of $5 million dollars of Term Loan B obligations. So, at the outset, the sale wipes off over $16.3 million dollars, plus interest and fees, from the Estate's books."). The proposed Sale Order included language that would capture and eliminate the Avoidance Actions set forth in the Committee Adversary Action. The Committee filed a preliminary objection on September 6, 2019, asserting that the Third Circuit had not "definitively addressed whether avoidance actions are property of a debtor's estate, or whether such claims or a trustee's right to pursue avoidance actions can be sold," and that there was uncertainty regarding whether those assets were being acquired under the APA. (Bankr. D.I. 194 at 9-11).[3]

---

[3] Appellants argued:

> Section 2.1(a)-(q) of the [APA] identifies the assets to be acquired, the "Acquired Assets," by the Stalking Horse Bidder. Section 2.1(a)-(q) fails to identify estate claims or causes of action, including fraudulent transfer claims and claims against the Debtors'

The pendency of the Committee Adversary Action and the proposed sale of the Avoidance Actions were discussed during the Sale Hearing. (Sale Hr'g Tr. at 80:24-81:4; 124:23-126:10; 144:6-145:15 (counsel for GenNx and Schramm II acknowledging that "challenge" claims against GenNx were among the "assets" being purchased). Following argument, the Bankruptcy Court overruled Appellants' objections to the sale, "agree[d], given the totality of the circumstances, that the sale process was fair" and expressed the belief that the "the market has spoken," noting "[t]here were no other bidders for any of the assets." (*Id.* at 147:24-148:10). The Bankruptcy Court noted that:

> the process post-bankruptcy did try to solicit numerous financial and strategic buyers, did allow extended due diligence for parties. It appears that several parties were actively doing due diligence and kicking the tires in considering whether to buy the assets. And notwithstanding that, no bid for the assets was received.

(*Id*. at 148:18-24). The Bankruptcy Court found that the "insider relationship" cited by Appellants "was not hidden." (*Id.* at 147:24-148:4). And with respect to the sale of the Avoidance Actions, found that "all the parties were aware that the avoidance actions were included in the price." (*Id*. at 151:9-10). The Bankruptcy Court further determined that "the asset purchase agreement does include the avoidance actions," and also determined "there is not any law that precludes the sale of avoidance actions." (*Id*. at 151:15-17).

---

directors, officers and employees, as an Acquired Asset. Yet paragraph 23 of the Sale Motion identifies the assets to be purchased as "[t]he Purchased Assets include avoidance actions arising from or related to any contract or other obligation that will be assumed and assigned to the purchaser as part of any Sale Transaction.

Given the material differences as to what assets are being purchased, the Court cannot determine whether the sale price is fair and reasonable.

(Bankr. D.I. 194 ¶¶ 29-30).

5

The Bankruptcy Court entered the Sale Order on September 17, 2019. (Bankr. D.I. 208). Under the Federal Rules of Bankruptcy Procedure, Appellants were entitled to a temporary, 14-day stay of the Sale Order. Fed. R. Bankr. P. 6004(h), 6006(d). The Debtors and Schramm II asked the Court to waive the temporary stay so that the transaction could close immediately. At Appellants' urging, however, the Bankruptcy Court declined – presumably to allow Appellants time to seek a stay of the Sale Order pending appeal. On September 27, 2019, the Committee timely filed its notice of appeal (C.A. No. 19-1825 (MN), D.I. 1), but it did not seek a stay of the Sale Order pending appeal. As a result, the sale was not stayed, and it closed on October 3, 2019. Eight days later, DNOW filed its own appeal from the Sale Order, but it too did not seek a stay pending appeal. (Bankr. D.I. 245).

### E.     Appeals and Motion to Dismiss

On October 25, 2019, the Bankruptcy Court granted Appellants' request to certify an appeal directly to the Third Circuit regarding whether avoidance actions are property of the estate that can be transferred. (Bankr. D.I. 270). On November 21, 2019, Appellants filed their Petition for Permission to Appeal Pursuant to 28 U.S.C. 158(d)(2). Following briefing, on February 26, 2020, the Third Circuit denied the Petition and directed that "[i]f the parties appeal the Bankruptcy Court's [Sale] Order, the [District] Court is instructed to consider mootness in the first instance." (*See* Order, Case No. 19-8045 (3d Cir. Feb. 26, 2020)).

On April 7, 2020, Appellees filed the Motion to Dismiss, seeking entry of an order dismissing the appeals as statutorily moot pursuant to § 363(m) of the Bankruptcy Code. The Motion to Dismiss is fully briefed. (C.A. No. 19-1825 (MN), D.I. 7, 9, 11). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II. <u>JURISDICTION</u>

Appeals from the Bankruptcy Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C § 158(a)(1) and (3).

Here, the Sale Order constitutes a final order subject to appeal. Therefore, but for the statutory mootness issue, this Court would have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). As discussed below, however, Appellants' failure to seek a stay of the Sale Order effectively deprives this Court of jurisdiction under the express provisions of 11 U.S.C. § 363(m).

## III. <u>DISCUSSION</u>

Appellants present numerous arguments regarding transferability of the Avoidance Actions (D.I. 10), but the Court cannot consider them if the appeal of the Sale Order is moot under § 363(m) of the Bankruptcy Code. *See Cinicola v. Scharffenberger*, 248 F.3d 110, 127 n.19 (3d Cir. 2001) ("[W]e must first answer the question of statutory mootness before proceeding to the merits[.]"). Appellants seek entry of an order dismissing the appeals as statutorily moot pursuant to § 363(m) because Appellants did not obtain a stay of the sale, which proceeded to close with a good faith purchaser.

Section 363 of the Bankruptcy Code allows chapter 11 debtors, after notice and a hearing, to sell property of their estates outside of the ordinary course of business and "free and clear" of any other interests. 11 U.S.C. §§ 363(b)(1) and (f). Section 363(m) limits an appellant's ability to challenge such a sale on appeal, providing that when the bankruptcy court has authorized a sale to a good faith purchaser, the sale cannot be undone or modified on appeal unless it was stayed pending appeal:

7

> The reversal or modification on appeal of . . . a sale or lease of property does not affect the validity of a sale or lease . . . to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). As the Third Circuit has recognized, § 363(m) effectively makes an appeal "statutorily moot" if the appeal challenges a sale to a good faith purchaser and "the underlying sale . . . was not stayed pending the appeal." *In re Pursuit Capital Mgmt., LLC*, 874 F.3d 124, 135 (3d Cir. 2017). A party can avoid statutory mootness only in the "rare" case when reversal or modification of the sale order will not affect the sale's validity. *Pursuit*, 874 F.3d at 138.

One of the purposes of § 363(m) is to "promote the finality of sales." *Pursuit*, 874 F.3d at 133 (also indicating that "[section 363(m)] provides not only . . . finality to the judgment of the bankruptcy court, but particularly . . . finality to those orders and judgments upon which third parties rely.") (internal citations and quotation marks omitted); *In re Energy Future Holding Corp.*, 596 B.R. 473, 477 (D. Del. 2019) (same). Section 363(m) also serves "to encourage participation in bankruptcy asset sales and increase the value of the property of the estate by protecting good faith purchasers from modification by an appeals court of the bargain struck with the [debtor-in-possession]." *In re Brown*, 851 F.3d 619, 622 (6th Cir. 2017) (internal citations omitted). Section 363(m)'s dual policies – providing finality to bankruptcy sales and court orders, and encouraging bidding in bankruptcy asset sales – help to attract investors and rehabilitate debtors. *Energy Future Holding*, 596 B.R. at 477. Without this provision, "the risk of litigation would chill prospective bidders or push them to demand a steep discount." *In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015).

Appellees argue that, as a matter of law, Appellants' failure to seek a stay renders this appeal statutorily moot, regardless of their reasons for not seeking a stay. Conversely, Appellants

argue that the Third Circuit has not adopted a "per se" rule and that statutory mootness does not apply here because: (i) the purchaser is not a good faith purchaser entitled to the protections of § 363(m); (ii) the Avoidance Actions allegedly purchased by Schramm II are not assets or property belonging to the Debtors' bankruptcy estate; and (iii) this Court may fashion effective relief on appeal that would not affect the validity of the underlying sale.

Appellants are correct that, unlike a majority of courts, the Third Circuit has not adopted a per se rule that moots a challenge to a sale under § 363(m) automatically when a stay is not obtained. *Pursuit*, 874 F.3d at 135. For a purchaser to claim the protection of § 363(m), the purchaser must first have acted in good faith, including payment of appropriate value, for the subject assets. *See Pursuit*, 874 F.3d at 135-36 (citing *ICL Holding,* 802 F.3d at 553) (internal quotations marks omitted). Thus, "where the good faith of the purchaser is at issue, the district court is required to review the bankruptcy court's finding of good faith before dismissing any subsequent appeal as moot under § 363(m)." *In re Tempo Tech. Corp.,* 202 B.R. 363, 367 (D. Del. 1996). If the 'good faith' step is satisfied, courts can then proceed to application of the two-prong § 363(m) mootness test called for by the Third Circuit's decision in *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir. 1998). *See Pursuit*, 874 F.3d at 138. Mootness will not be found when (i) the sale was stayed pending the appeal *or* (ii) reversal or modification of the sale order will not affect the validity of the sale. *Id*.

### A.     Applicability of § 363(m)

This Court is first required to review the Bankruptcy Court's finding of good faith. *Tempo Tech,* 202 B.R. at 367. Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define "good faith," and the Third Circuit has recognized that courts have "turned to

9

traditional equitable principles, holding that phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa.*, *Inc.,* 788 F.2d 143, 147 (3d Cir. 1986).

Here, Paragraph 32 of the Sale Order expressly provides:

> The transactions contemplated by the Stalking Horse Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction . . . unless such authorization and such Sale Transaction are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

(Sale Order ¶ 32). As Appellants acknowledge, the Bankruptcy Court's finding that Schramm II was a good faith purchaser is reviewed for "clear error." (D.I. 9 at 3). In this context, "clear error" review means that the finding of good faith cannot be set aside unless Appellants come forward with admissible evidence of bad faith. *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016). This Court will set such a finding aside only if the appellant presents "admissible evidence of bad faith" sufficient to allow this Court to say "that it was clear error for the bankruptcy judge to conclude that the sale occurred in good faith." *Id.*

### 1. Schramm II Purchased in Good Faith

Appellants argue that "although good faith provisions are included in the Sale Order, there was no evidence offered in support of those findings at the Sale Hearing with respect to the sale and purchase of Avoidance Actions." (D.I. 9 at 6). "To the contrary, the evidence at the sale hearing demonstrated that Purchaser is not a good faith purchaser 'for value' with respect to the Avoidance Actions." (*Id.*) Appellants argue that Schramm II is an insider and purchased the

10

Avoidance Actions for the purpose of "bury[ing]" them for the benefit of GenNx 360, as opposed to generating value for creditors. (*See* Sale Hr'g Tr. at 144:13-17).

Appellants, however, have not identified any "admissible evidence of bad faith" sufficient to satisfy this high standard. Their argument is to point out that Schramm II is wholly owned by the Debtors' controlling shareholder. (D.I. 9 at 6). This relationship was not hidden, and the fact that Schramm II is an insider of the Debtors is insufficient to show that it acted in bad faith. "It is well established that a party's status as an insider does not automatically prevent it from being a purchaser in good faith . . . . Thus, a sale to an insider, without more, does not establish a lack of good faith." *In re Old Cold, LLC,* 558 B.R. 500, 516 (B.A.P. 1st Cir. 2016) (collecting cases); *Sabatini Frozen Foods, LLC v. Jones*, 2013 WL 1345104, at *4 (E.D.N.Y. 2013) ("It is not 'per se bad faith' for an insider to purchase assets of a debtor, and 'a sale to him without more [will] not suffice to show a lack of good faith.'") (internal citations omitted). The Bankruptcy Court correctly pointed out that Schramm II's status as an insider was disclosed from "day one" of the Debtors' chapter 11 proceedings, and there was nothing unfair or fraudulent about the process. (Sale Hr'g Tr. at 147:22-25; 148:1-4 ("In addition, the Debtor has noted that the insider status of the buyer has been disclosed from day one, and it is not per se unfair to sell to an insider. I agree, given the totality of the circumstances, that the sale process was fair. I agree that the disclosure of the insider, or the insider relationship, was not hidden, as Abbotts Dairies and the other cases, which have questioned and overruled sales to insiders typically entail.")). Beyond that argument, Appellants simply insist that they "objected" to the good faith finding and even brought an adversary action against Schramm II's owner, GenNx360. (D.I. 9 at 6–7). The presence of an objection, however, is not sufficient to demonstrate clear error in the Bankruptcy Court's finding.

11

Appellants further argue that they did not know that the Avoidance Actions would be included in the sale and argue unfairness in the sale process. (*Id.*). The record, however, reflects that Debtors and Appellees disclosed in the Sale Motion that avoidance actions would be included in the proposed sale and were not part of the "Excluded Assets" set forth in the APA. (*See* Sale Motion ¶ 23; Bankr. D.I. 163-2, §§ 2.1-2.2). The record further supports the Bankruptcy Court's findings regarding an open and fair sale process with respect to other bidders. (*See* Sale Hr'g Tr. at 148:18-24 ("[C]learly, the process post-bankruptcy did try to solicit numerous financial and strategic buyers, did allow extended due diligence for parties. It appears that several parties were actively doing due diligence and kicking the tires in considering whether to buy the assets. And notwithstanding that, no [other] bid for the assets was received."). The Bankruptcy judge found that the fact Appellants had agreed in advance to the process rendered their objections "less persuasive." (Sale Hr'g Tr. at 148:5-8 ("I also agree that the fact that the parties agreed to an extended process that the Committee and DNOW agreed to does make their argument that it is not a fair process less persuasive.")).

The fact that Schramm II was an insider of the Debtors is not evidence of bad faith; if it were, countless sales in bankruptcy courts would be invalidated. Appellants point to no evidence of bad faith, fraud, or collusion committed by Schramm II. The Court finds no clear error in the Bankruptcy Court's finding that Schramm II acted in good faith.

### 2. Schramm II Purchased for Value

Appellants assert that Schramm II failed to purchase Schramm's assets "for value." (D.I. 9 at 8-9). Appellants assert that the evidence at the sale hearing demonstrated that the Debtors performed no separate analysis of the merits or value of the Avoidance Actions. (*See* Sale Hr'g Tr. at 79:21-80:8 (independent director concedes no due diligence performed); 83:16-18; 129:11-

12 (counsel for GenNx/Schramm II argues "no evidence put in the record that these claims are worth any money, actually"); 139:20-21 (counsel for GenNx/Schramm II states the claims have not been valued and do not need to be valued). Appellants further argue that the Debtors did not market the Avoidance Actions (*see id.* at 29:13-22; 80:4-8; 93:24-94:1) and performed no separate allocation of the purchase price with respect to the Avoidance Actions (*id*. at 48:14-49:2).

The crux of Appellants' arguments is that Schramm II could not be a good faith purchaser "for value" if it did not itemize and separately value the Avoidance Actions on their own. *Id*. Appellants cite no authority for this proposition, however. This was a sale of all of Schramm's assets – not just the Avoidance Actions. It is undisputed that Schramm II provided consideration in excess of $11 million for the assets. The Bankruptcy Court noted that the value of the Avoidance Actions was part of the $11 million purchase price. (Sale Hr'g Tr. at 151:9-10 ("And I agree with GenNx that all the parties were aware that the avoidance actions were included in the price.")). Neither the Bid Procedures Order nor relevant law provide support for Appellants' argument that Schramm II was required to set forth a separate value for each asset in order to have purchased them "for value." The Court finds no clear error in the Bankruptcy Court's finding that the consideration Schramm II provided for the assets—which included the Avoidance Actions—constituted "value."

### B.    The Stay and Validity Prongs

Because the Court concludes that the sale was in good faith, the Court will proceed to the application of the two-prong § 363(m) mootness test. *Pursuit,* 874 F.3d at 138 (citing *Krebs*, 141 F.3d at 499).

### 1. The Stay Requirement

Appellants concede that they allowed the sale to close without seeking a stay. (D.I. 10 at 8 ("No stay of the Sale Order was sought or obtained. The Sale closed on October 3, 2019.")). Appellants did not seek a stay of the Sale Order, despite the Bankruptcy Court's warning that they must seek a stay if they wish to challenge the sale's validity. (Sale Order ¶ 32 ("[T]he reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction . . . unless such authorization and such Sale Transaction are duly stayed pending such appeal.")).

### 2. Validity of the Sale

When an appellant has failed to obtain a stay, statutory mootness under § 363(m) will be avoided only in the "rare" case when reversal or modification of the sale order will not affect the sale's validity. *Pursuit*, 874 F.3d at 138. This is a "high bar" to meet, and a "narrow exception" that may be satisfied only if the challenges to the Sale Order are "so divorced from the overall transaction that the challenged provision would have affected none of the considerations on which the purchaser relied." *Energy Future Holding*, 596 B.R. at 477. The Third Circuit has indicated that the following challenges do affect a sale's validity: (1) any challenge to a "central element" of the sale (*Pursuit*, 874 F.3d at 139); (2) any challenge that could affect the value of the purchased assets (*In re Rickel Home Centers, Inc.,* 209 F.3d 291, 305-06 (3d Cir. 2000)); and (3) any challenge that "would claw back the sale from a good-faith purchaser" (*Pursuit*, 874 F.3d at 139). To determine whether a challenge affects the validity of a sale, courts "must look to the remedies requested by the appellants." *Pursuit*, 874 F.3d at 139.

Appellants misstate the standard for meeting the narrow exception of § 363(m). The standard is not, as Appellants suggest, whether the Court can fashion "effective relief" by

modifying or reversing the sale order. (D.I. 9 at 10, 12). The standard is whether the relief requested on appeal will affect the sale's validity. *Energy Future Holding*, 596 B.R. at 478 ("Under Third Circuit law, an appeal is statutorily moot where the Appellants' requested relief will affect the validity of the sale if granted."); *Pursuit*, 874 F.3d at 138-39 (same). The Third Circuit has held specifically that an appellant's request for "a ruling that avoidance powers do not belong to the estate and may not as a matter of law or policy be transferred to the [appellees]" does affect the validity of the sale and, therefore, does not meet section 363(m)'s narrow exception." *Id*. at 140-41. That is precisely the argument Appellants are raising here; they concede that they seek "a ruling that the Avoidance Actions were not, and could not, have been included as part of the Sale." (D.I. 9 at 10).

Appellants insist that they "do not seek to undo the Sale," and purport to distinguish their efforts as only a challenge to the inclusion of the Avoidance Actions as part of the Sale. (D.I. 9 at 10-16 (citing *In re Cybergenics Corp*., 226 F.3d 237 (3d Cir. 2000)), which the Bankruptcy judge distinguished as concerning whether avoidance actions constituted "business assets" for purposes of a particular sale. (*See* Sale Hr'g Tr. at 151:1-8). This is the argument, however, that the Third Circuit has said can be preserved for appeal only if a stay is obtained. *Pursuit*, 874 F.3d at 135 ("[T]he transferability of the avoidance claim is the very merits issue that the [appellants] should have preserved by seeking a stay but did not."). As the Third Circuit observed, "[i]t would be procedurally odd, and would undermine the policy rationale behind § 363(m), to allow parties to avoid the responsibility to get a stay by posing a merits issue in the form of a question about estate property." *Id.*

Indeed, looking to the remedies requested, Appellants assert that: (1) "certain of the terms included in the Sale Order were, and are, highly objectionable;" and (2) the Court can compel

Schramm II to "return all cash transferred to it at [the] closing of the Sale." (D.I. 9 at 10, 12). Such requests strike directly at the heart of the sale itself, concern provisions on which Schramm II relied, and attack the consideration paid – a central element of the sale. *See Pursuit*, 874 F.3d at 139 (stating that any challenge to a "central element" of the sale affects the sale's validity); *Energy Future Holding*, 596 B.R. at 477 (indicating that challenges to provisions "on which the purchaser relied" constitute challenges that affect the sale's validity); *Rickel*, 209 F.3d at 305-06 (challenges that could affect the value of the purchased assets affect the sale's validity). The Court agrees with Appellees that, in light of the relief Appellants describe, the appeals do not fall within § 363(m)'s narrow exception.

## IV. CONCLUSION

Appellants have failed to point to anything in the record demonstrating that the Bankruptcy Court's good faith purchaser finding is clearly erroneous. Appellants did not seek a stay of the Sale Order, and the appeals seek to undo central aspects of the sale on appeal. For the reasons set forth herein, Debtors' motions to dismiss the appeals (C.A. No. 19-1825 (MN), D.I. 7; C.A. No. 19-1946 (MN), D.I. 6) are granted. An appropriate order will follow.